OILER ET AL., APPELLEES, *v.* DAYTON RELIABLE TOOL & MFG. CO. ET AL., APPELLANTS.

(No. 4463—Decided November 14, 1974.)

- *Mr. James D. Zachritz,* for appellees.
*Mr. Robert J. Stoecklein,* for appellants.

CRAWFORD, P. J. Plaintiffs, the appellees herein, are former employees of defendant Dayton Reliable Tool & Manufacturing Company. As such, they became third-party beneficiaries under a profit-sharing agreement entered into between Reliable and defendant Third National Bank and Trust Company, the trustee.

This agreement was made on August 20, 1963. It provided that on August 31, 1963, and each year thereafter on the same date, which was referred to as the end of the fiscal year, Reliable, by action of its board of directors, would pay to the bank contributions within a specified maximum; that the bank, as trustee would thereupon allocate such monies to the accounts of employees of Reliable (qualified by three, later two, prior years of employment), who were thereupon designated as participants; that the trustee should handle and invest the funds as a whole, without regard to these allocations, which were referred to as primarily a matter of accounting; that beginning August 31, 1964, and each year thereafter, the trustee should make certain adjustments in the accounts of the participants who were still employed at that time, deducting (or adding) their proportionate share of any losses (or gains) on the market value of investments, and adding their proportionate shares of amounts forfeited from the accounts of those who were no longer employed; that each employee with the required period of prior service was qualified to become a participant on the 31st day of August following completion of his three (or two) years of service; that on

August 31 of the following year, he should first become entitled to a vested and non-forfeitable interest in ten percent of the amount standing to his credit, twenty percent on the next August 31, etc., with a limit on the maximum amount he might ultimately receive.

Reliable reserved a measure of control and authority to make decisions. The agreement provided that Reliable should, and it did appoint an administrative committee with considerable discretionary power and authority to perform administrative duties, determine the rights of participant employees, give instructions to the trustee, etc.

The essential question in this case is whether the plaintiffs, whose employment terminated between October 2, 1970, and March 8, 1971, had a vested interest in the amount that had been allocated to their respective accounts on August 31, 1970, or whether by reason of not being employed on August 31, 1971, they lost any right to claim a vested interest therein and forfeited the amount allocated but not vested. The Court of Common Pleas held for the plaintiffs.

The trustee bank, relying upon the ruling of the administrative committee, contends that plaintiffs did not obtain a vested interest in the allocations of August 31, 1970, and that by reason of the termination of their employment before August 31, 1971, they forfeited any rights to the amounts allocated August 31, 1970.

We have added our own emphasis in the following quotations from the agreement. Article II, Section 4, of the agreement states:

"The Committee shall have the powers and duties specified in this instrument and, not in limitation but in amplification of the foregoing, shall have *power to construe said Trust to determine all questions that shall arise thereunder,* including particularly, questions submitted by the Trustee on all matters necessary for them properly to discharge their duties, powers and obligations and shall have power to make policies concerning the *status of Participating Employees* in time of layoff. The *decisions* of the said Com-

mittee made in good faith upon any matter within the scope of its authority *shall be final,* but the Committee at all times in carrying out its decisions shall try to act in a uniform and non-discriminatory manner and shall from time to time set down uniform rules of interpretation and administration, which rules may be modified from time to time in the light of their experience."

Article IV, Section 3, of the agreement provides:

"Leave of absence, temporary lay-off or service in the Armed Forces of the United States shall not be adjudged a break in service, the same to be determined in accordance with *uniform rules* to be *adopted by the Administrative Committee* from time to time."

Reliable was required to certify to the committee each year the amount of its contributions to the trust, etc., whereupon the allocations for that year were to be made.

Also, Article VI of the agreement provides:

"*Allocations to Participants in accordance with the provisions of Article V shall not vest any right or title to any part of the assets of the* Trust.

"Section 2. *When a Participant has completed one (1) year of continuous service after entry in the Plan,* ten percent (10%) of the amount credited to his account *shall become vested and nonforfeitable. At the end of each additional year of continuous service,* an additional ten percent (10%) of the full amount credited to his account *shall become vested and non-forfeitable * * *.*

"Section 3. *Upon severance of employment* except as under '2' above or to join the Armed Forces of the United States, a *Participant's non-vested interest shall be forfeited.*

"Section 5. *When a Participant ceases to be in the service of the Company, the Administrative Committee shall determine his vested interest* and notify the Trustee in writing. Such vested deferred balances of former employees shall thereafter participate only in the earnings and losses of the trust but not in the contributions or re-allocations of forfeitures, and such accounts shall be credited accordingly each year. *Any sums which are not vested*

*in the Participant at the time his services are terminated shall be forfeited* and re-allocated among the Participants in the same manner as the Company contribution would be made for the year in which the forfeiture occurs; such re-allocation shall include all new Participants coming into the Trust as of August 31st of the year of forfeiture.''

Article IX, Section 8 states:

''The written *approval* of any account *by the Company and the Committee,* as to all matters and transactions stated or shown therein, shall be final and binding upon the Company and all persons who then shall be or thereafter shall become interested in this Trust * * *.''

The agreement provides that it shall not constitute a contract between Reliable and any employee or guarantee the retention of any employee, or prevent Reliable from discharging him.

According to the briefs, the employment of plaintiffs and others was terminated for lack of work between October 2, 1970, and March 8, 1971, and in June and July of 1971 all were paid their vested interest in the fund as determined by the company and the trustee and the interpretation of the plan, as made by the administrative committee. The committe ruled that they had no vested interest in the amounts allocated to their respective accounts on August 31, 1970, and that their non-vested interests were forfeited upon the termination of their employment.

We are of the opinion that this is the inescapable effect of Sections 1, 2, 3 and 5 of Article VI of the agreement as above quoted. Section 1 provides that the mere allocation vests no right or title in the participating employees. Section 2 sets the schedule for vesting by fixing the time thereof at the end of the next fiscal year following the allocation. Section 3 provides for the forfeiture of a terminated employee's non-vested interest. Section 5 repeats the forfeiture provision and gives the Administrative Committee the duty and authority to determine what, if any, interest of a former employee shall be vested.

The committee's ruling correctly applied these provisions. Thereupon, plaintiffs brought this action, claiming,

among other things, that Reliable wrongfully computed their shares of the profit-sharing plan. The case was referred to a referee for a hearing. He found, and the court adopted his report, that plaintiffs were entitled to have their vested percentages calculated upon the amounts of their respective accounts on August 31, 1970.

Under the provisions of the agreement quoted above, no part of the allocations to the plaintiffs' accounts on August 31, 1970, was to vest until August 31, 1971, and then only provided that the respective employees were still with Reliable at that time. Inasmuch as they were no longer employed on that date, they did not qualify for the vesting of any part of the amounts allocated on August 31, 1970.

In adopting the referee's report, the court added that in his opinion the administrative committee had exceeded its powers by purporting to change the agreement. According to our view, they correctly read and interpreted the agreement, and acted within the scope of their authority.

Counsel for the defendants has supplied an abundance of convincing authority recognizing the powers of such a committee and sustaining the validity of its acts as binding upon the parties, in the absence of fraud or bad faith.

"Private voluntary pension plans commonly contain a provision whereby the company management, or boards set up for the administration of the plan, have discretion to determine eligibility and other matters under the plan, and it is usually provided that the decision in this respect shall be conclusive. The courts have usually held that such grants of discretionary authority are effective and binding upon persons claiming benefits, so that decision of the designated authority is not reviewable at least in the absence of fraud." Annotation 42 A. L. R. 2d 461, at 472.

"* * * We conclude that an employer who creates a profit sharing retirement plan for the benefit of his employees, which plan is a voluntary one supported solely by contributions from the employer, has the right to prescribe the terms and the manner in which it shall be administer-

ed; and such terms as are prescribed are binding upon and determinative of the rights of an employee asserting a right to benefits thereunder. And where the terms of the plan as prescribed by such employer provide that the decision of the trustees appointed to administer such plan shall be final and conclusive, the decision of such trustees is binding on an employee claiming benefits under such plan." *Going* v. *Southern Mill Employees' Trust* (Okla. 1955), 281 P. 2d 762, 763.

"All the cases which have been called to our attention take the position that great latitude is tolerated in the exercise of judgment by pension-fund trustees. It is not our function to determine whether the committee's disposition is one we would have selected.

"* * * All of the cases dealing with the subject hold that where a pension plan is not part of a contract of employment, and the employee makes no contributions to it, the company may retain broad discretion in administering the fund since the benefits are in the nature of gratuities. The disposition of such funds is limited only by the terms of the trust instrument. Under these circumstances the courts have refused to interfere unless the aggrieved party has made a strong showing that the company acted arbitrarily, capriciously, fraudulently, or in bad faith." *Lano* v. *Rochester Germicide Co.* (1962), 261 Minn. 556, 113 N. W. 2d 460.

"The authorities are uniform in holding in cases of this character that the decision of the administrative board, where the pension plan so provides, is conclusive upon the rights of an employee in the absence of fraud or arbitrary action. * * * The stipulations in pension plans for the decision of questions arising on the rights of employees to receive pensions are not unlike those often found in construction contracts, making an engineer or architect the final arbiter of disputes arising between the parties.

"* * * The decision of the Board of Pensions denying Menke's claim for a pension is therefore conclusive, to use the words of this Court in *Guild* v. *Andrews*, 8 Cir. 137 F. 2d 369, 371, 'in the absence of fraud or such gross mistakes

as imply bad faith or a failure to exercise an honest judgment.' The burden of showing such fraud or bad faith or mistake was upon the appellant here, and to sustain such a showing, the evidence 'must be more than a mere preponderance, it must be overwhelming.' " *Menke* v. *Thompson* (C. A. 8, 1944), 140 F. 2d 786, 791.

"The ultimate inquiry for the trial court is whether the Committee in denying the appellant the bonus awards under Section 8 exercised a good faith judgment on reasonable grounds or indulged in an arbitrary use of its power." *Hainline* v. *G. M. Corp.* (C. A. 6, 1971), 444 F. 2d 1250, 1257.

The following cases from many other states to the same general effect have also been cited: *Neuhoff Bros. Packers Management Corp.* v. *Wilson* (Texas 1970), 453 S. W. 2d 472; *McNevin* v. *Solvay Process Co.* (1898), 53 N. Y. S. 98, aff'd 167 N. Y. 530, 60 N. E. 1115; *Norman* v. *Southern Bell Tel. & Tel. Co.* (Ky. 1959), 322 S. W. 2d 95; *Smith* v. *New England Tel. & Tel. Co.* (N. H. 1968), 246 A. 2d 697; *Anderson* v. *Seaton* (1957), 14 Ill. App. 2d 53, 143 N. E. 2d 59; *Molburg* v. *Hunter Hosiery, Inc.* (N. H. 1960), 158 A. 2d 288; *Long* v. *Southwestern Bell Telephone Co.* (Tex. 1969), 442 S. W. 2d 462; *Teren* v. *First National Bank of Chicago* (Ore. 1966), 412 P. 2d 795; *Bono* v. *Kramer* (Mass. 1963), 191 N. E. 2d 760.

Plaintiffs have produced no authority to the contrary. They have referred only to a decision of the Dayton Municipal Court in support of the principle that plaintiffs have a right to seek adjudication in such a controversy, a privilege which they have exercised in this case. *Vocke* v. *Third Natl. Bk. & Tr. Co.* (1971), 28 Ohio Misc. 58. The plaintiffs-employees lost in that case, but upon issues not relevant here.

Counsel have been unable to cite Ohio cases declaring the powers of such an administrative committee. Both of the Ohio cases referred to in the briefs as remotely related to this question—*Wilson* v. *Rudolph Wurlitzer Co.* (1934), 48 Ohio App. 450, and *Sigman* v. *Rudolph Wurlitzer Co.* (1937), 57 Ohio App. 4—were decided on other issues. In the latter case, however, where the employer made the de-

cision to retire the employee for age, thereby affecting his benefits, the court added this interesting comment at page 10:

"The employee must bow to the appellant's opinion and edict."

In our case, the trial court expressed apprehension that the administrative committee's exercise of the powers vested in it by the agreement might result in such forfeitures as would cause the funds to revert to Reliable. Such a contingency is specifically forbidden by the agreement, which provides fully for the protection of the participants in the plan, even in the event Reliable should (as it has the right to do) discontinue its contributions or terminate the plan, or if it should go into bankruptcy or liquidation.

Inasmuch as the decision of the administrative committee in the present case was not made arbitrarily, capriciously, fraudulently or in bad faith, and inasmuch, further, as we find their interpretation and application of the agreement to be correct, it is necessary that the judgment for the plaintiffs be reversed and judgment entered for The Third National Bank and Trust Company, the trustee, and that it recover its costs herein.

*Judgment reversed.*

KERNS and SHERER, JJ., concur.