JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant Dream Makers, Inc. ("Dream Makers") appeals the decision of the Cuyahoga County Court of Common Pleas granting Dream Makers' motion for summary judgment in part and denying it in part. Defendants-appellees Ronald S. Marshek and Ronald S. Marshek Co. L.P.A. ("Marshek") have filed a cross-appeal of the trial court's decision awarding damages to Dream Makers in the amount of $18,495. For the following reasons, we affirm.
 {¶ 2} Joseph D'Aurora, an aviator and inventor, founded Dream Makers, Inc. (formerly known as KDA Enterprises, Inc.) to develop products, obtain patents, and to sell the products or the right to the patents. During the course of his business, D'Aurora maintained a relationship with the Watts, Hoffman, Fisher and Heinke law firm ("Watts, Hoffman") for trademark and copyright applications. D'Aurora also developed a relationship with attorney Ronald Marshek whereby Marshek represented D'Aurora in tax and other related legal matters.
 {¶ 3} In the early 1980's, D'Aurora obtained a patent through Watts, Hoffman for an electronic crossword puzzle he invented ("the `973 patent"). Sometime after the `973 patent was issued, D'Aurora approached Watts, Hoffman about prosecuting Dream Makers' patent infringement claims involving the `973 patent. However, D'Aurora was dissatisfied with the fee Watts, Hoffman quoted for the prosecution of these claims, so he asked Marshek to pursue these claims.
 {¶ 4} Marshek agreed to prosecute Dream Makers' `973 patent claims. However, Marshek, who is not a registered patent attorney, informed D'Aurora that it would be necessary for him to consult with Watts, Hoffman during the course of his representation on specialized patent law issues. D'Aurora agreed to this consultation, and the parties signed Marshek's standard representation agreement.
 {¶ 5} Marshek's standard representation agreement provided for a contingency fee whereby Marshek would receive 40 percent of any royalties received from the negotiation of a license, plus a guaranteed amount not to exceed $5,000. The fee agreement was silent as to who would bear the cost of fees incurred as a result of Marshek's consultation with Watts, Hoffman ("outside counsel fees"). The contract between the parties dated August 9, 1996 was titled "Representation and Contingency Fee Agreement" ("the Agreement").
 {¶ 6} In evaluating whether a patent owner has a valid claim for infringement, the patent owner's attorney must conduct an infringement review which involves an examination of existing products on the market to determine whether they infringe on the patent. Watts, Hoffman and another law firm, Sand Sebolt, performed these services and billed Dream Makers directly.
 {¶ 7} Marshek successfully negotiated royalty agreements with two companies, Integrated Display Technology, Ltd. ("IDT") and Lexibook, Ltd. ("Lexibook"). Marshek submitted drafts of these licensing agreements to Watts, Hoffman and Sand Sebolt for review and revision. As with other services they performed, both Watts, Hoffman and Sand Sebolt billed Dream Makers directly for these services.
 {¶ 8} Under these agreements, IDT and Lexibook agreed to pay Dream Makers for the licensing of the patents. These licensees paid a total of $135,477 to Marshek under the license agreements and Marshek deposited these funds into his IOLTA account. Pursuant to the parties' Agreement, Marshek retained 40 percent of all royalty payments and forwarded the remaining 60 percent to Dream Makers. At the time Dream Makers commenced this lawsuit, Marshek had retained a total of $54,190.
 {¶ 9} In June 1999, after Marshek successfully negotiated the two royalty agreements, Christopher Bourquin ("Bourquin") assumed the role of president and chief executive officer of Dream Makers. When Bourquin took over management of Dream Makers, he sent a letter to Marshek instructing him that "from this point forward," he was not to take his 40 percent share until he had first paid Watts, Hoffman and Sand Sebolt for their services out of the 40 percent share. On several other occasions, as royalty payments were being made to Marshek, Bourquin requested that he pay Watts, Hoffman and Sand Sebolt before paying himself. At the time the complaint was filed in common pleas court, Dream Makers had paid Watts, Hoffman and Sand Sebolt a total of $18,495 in outside counsel fees.
 {¶ 10} In the complaint, Dream Makers alleged that Marshek accepted the contingent fee for services even though he did not perform his obligations under the Agreement and further alleged that he was incapable of performing them. Specifically, Dream Makers maintained that Marshek failed to investigate, prepare, and prosecute litigation and/or negotiate a settlement regarding any crossword patent infringement. Dream Makers further contended that Marshek was unwilling to "sit first chair" with respect to any litigation arising out of infringement of the `973 patent.
 {¶ 11} Dream Makers' suit against Marshek raised claims for (1) breach of contract, (2) breach of trust and fiduciary duty, (3) fraud, and (4) conversion. Marshek asserted a counterclaim for breach of contract.
 {¶ 12} Both parties filed motions for summary judgment. The trial court found that Marshek had fully performed under the terms of a valid contract and dismissed Dream Makers' claims for conversion and fraud. However, the trial court awarded Dream Makers the $18,495 it had paid to outside counsel.
 {¶ 13} Dream Makers appealed and Marshek filed a cross-appeal challenging the determination that Marshek was responsible for paying the outside counsel fees incurred in connection with the `973 patent infringements.
 The Terms of the Contract {¶ 14} We will first address Marshek's sole assignment of error in his cross-appeal because it involves a determination of the terms of the parties' contract and thus lays the framework for all the other issues in this case. Marshek contends the trial court erred when it found he was obligated to compensate Dream Makers for outside counsel fees because such a finding is contrary to the intent of the parties.
 {¶ 15} Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Shifrin v. Forest City Enterprises, Inc. (1992),64 Ohio St.3d 635, 638. If the contract is unambiguous on its face, courts will not construe the contract's meaning contrary to its plain terms. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, syllabus. If the written language is a complete and accurate integration of the parties' contract, then the parol evidence rule precludes the introduction of evidence of conversations or declarations which occur prior to or contemporaneous with the written contract and which attempt to vary or contradict the written terms of the contract. Ameritrust Co. v. Murray (1984), 20 Ohio App.3d 333, 335. Where the written agreement is clear and unambiguous, it is not necessary to resort to rules of construction to determine the intent of the parties.Allen v. Standard Oil Co. (1982), 2 Ohio St.3d 122, 124. However, where a contract is ambiguous, a fundamental rule of construction holds that the ambiguity must be construed against the drafter of the agreement. ControlRealty Co. v. Clutter (1980), 62 Ohio St.2d 411, 413; Holderman v.Huntington Leasing Co. (1984), 19 Ohio App.3d 132, 134. This rule of construction is particularly applicable to attorney fee agreements in which the attorney who drafts the agreement possesses a superior bargaining position. Jacobs v. Holston (1980), 70 Ohio App.2d 55. The parties' Agreement clearly and unambiguously provides that Marshek was required to "investigate, prepare and prosecute litigation and/or negotiate a settlement regarding any crossword patent infringements and/or royalty agreements . . ." The contract also provides that Dream Makers "agrees to reimburse said Attorney for all of his out-of-pocket expenses related to this matter including but not limited to all Court costs, long distance telephone calls and copying incurred in the investigation, preparation, and litigation of this case."
 {¶ 16} The agreement, however, is silent as to how payment of outside counsel fees should be handled. Unless there is an express provision that the client is to pay for additional services, the fees for such services are included in the contingent fee. Columbus BarAssociation v. Brooks (1999), 87 Ohio St.3d 344. This is particularly true where the lawyer drafted the Agreement. If the parties intended that Dream Makers would pay for Marshek's consultation with outside counsel, the agreement should have stated so with specificity. In the absence of such a provision, the cost of outside counsel performing the work Marshek had expressly agreed to perform himself (i.e., investigation, preparation and prosecution of patent infringement litigation) is not chargeable to Dream Makers. Therefore, Marshek is financially responsible for the cost of any outside counsel fees incurred to fulfill his contractual duties.
 {¶ 17} Accordingly, Marshek's sole cross-assignment of error is overruled.
 Conversion {¶ 18} In Dream Makers' first assignment of error, Dream Makers argues the trial court erred when it granted Marshek's motion for summary judgment on the conversion claim and denied Dream Makers' motion. Dream Makers claims Marshek's possession of 40 percent of the royalty payments, or his asserted $54,190 fee, constitutes conversion of Dream Makers' funds.
 {¶ 19} Conversion is the wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from the owner's possession under a claim inconsistent with the owner's rights. Zacchini v. Scripps-Howard Broadcasting Co. (1976),47 Ohio St.2d 224, 226, reversed on other grounds (1977), 433 U.S. 562. "The elements of a conversion cause of action are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." Haul Transport of Va.,Inc. v. Morgan, 2nd Dist. No. 14859, 1995 Ohio App. Lexis 2240.
 {¶ 20} In the instant case, Marshek was entitled to his 40 percent contingent fee less the cost of outside counsel fees pursuant to a valid contract. Thus, Marshek's possession of his fees was not wrongful. Although Dream Makers is entitled to reimbursement of the $18,495 paid to outside counsel as a result of Marshek's consultation, Dream Makers recovered that amount under its breach of contract claim. Because Dream Makers' alleged damages for conversion are identical to its damages for breach of contract, the trial court correctly found "that this case is clearly and simply a contract action." Accordingly, Dream Makers' first assignment of error is overruled.
 Fraud {¶ 21} In its second assignment of error, Dream Makers claims the trial court erred when it granted Marshek's motion for summary judgment on Dream Makers' fraud claim and denied Dream Makers' motion. Dream Makers contends Marshek committed actionable fraud because he accepted a contingent fee for services that he neither performed nor was capable of performing.
 {¶ 22} Fraud is an intentional act or misrepresentation of one party, which precludes a meeting of the minds concerning the nature or character of the purported agreement. Haller v. Borror Corp. (1990),50 Ohio St.3d 10.
 {¶ 23} There is no evidence in the record demonstrating that Marshek ever misrepresented his qualifications or represented himself as an expert in patent law. To the contrary, D'Aurora testified at his deposition that Marshek explained to him at the time they entered into the Agreement that it would be necessary for Marshek to consult D'Aurora's patent attorneys on specialized patent law issues. Moreover, Dream Makers' claim that Marshek did not perform under the contract is without merit because he successfully negotiated licensing agreements with two companies which paid a total of $135,477 in royalties. Therefore, the trial court's dismissal of Dream Makers' fraud claim was proper, and Dream Makers' second assignment of error is overruled.
 Damages {¶ 24} In its third assignment of error, Dream Makers claims the trial court erred when it determined that Dream Makers' damages for breach of contract were $18,495 rather than the $54,191.
 {¶ 25} It is undisputed that Marshek performed valuable services for Dream Makers. In fact, he performed all of his obligations under the contract with assistance from outside counsel. Therefore, Dream Makers' third assignment of error is overruled.
 Motion to Compel {¶ 26} In the fourth assignment of error, Dream Makers contends the trial court erred when it failed to rule upon, and therefore by implication denied, Dream Makers' motion to compel. In its motion to compel, Dream Makers sought an order from the trial court compelling Marshek to respond to deposition questions relating to his expertise in the area of patent law. Dream Makers argues that it needed this information to determine whether "Marshek was able to perform, without the assistance of intellectual property counsel, the services which he had agreed to perform and for which he helped himself to a fee from Dream Makers' royalties."
 {¶ 27} However, because there is no evidence that Marshek ever claimed expertise in the area of patent law, Marshek's patent law qualifications, or lack thereof, are irrelevant to Dream Makers' fraud claim. The evidence revealed that the parties contemplated at the time of entering the Agreement that Marshek would consult Dream Makers' patent lawyers on specialized patent law issues. Thus, Marshek's lack of expertise in that area of law is irrelevant to any of the claims in this case. Therefore, the trial court's implicit denial of Dream Makers' motion to compel caused no prejudice to Dream Makers. Dream Makers' fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J. and ANN DYKE, J. CONCUR.