[Cite as *Keller & Kehoe, L.L.P. v. Smart Media of Delaware, Inc.*, 2016-Ohio-5409.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 103607**

---

# KELLER & KEHOE, L.L.P.

PLAINTIFF-APPELLANT

vs.

# SMART MEDIA OF DELAWARE, INC., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-822403

**BEFORE:** Laster Mays, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 18, 2016

-i-

**ATTORNEY FOR APPELLANT**

Robert D. Kehoe
Kehoe & Associates L.L.C.
900 Baker Building
1940 East Sixth Street
Cleveland, Ohio 44114-2210

**FOR APPELLEES**

Smart Media of Delaware, Inc.
15 E. Boscawen Street
Winchester, VA 22601-4779

**Also listed:**

LuAnn McDermaid, pro se
1103 Ashley Avenue
Indian Harbour Beach, FL 32937

Smart Handle, Inc., pro se
Smart Media Holdings, Inc., pro se
SMDI Special Trust, pro se
Snapshopper, Inc., pro se
15 E. Boscawen Street
Winchester, VA 22601-4779

ANITA LASTER MAYS, J.:

## I.  INTRODUCTION

**{¶1}**  Plaintiff-appellant law firm Keller & Associates, L.L.C. ("K&A"), successor in interest to Keller and Kehoe, L.L.P. ("K&K," and collectively, the "Firm"), appeals from default judgments entered against defendants for breach of attorney-client agreements between the parties.  The trial court awarded judgment, jointly and severally, in the amount of $527,096.06, plus statutory interest from the date of judgment and court costs.  Appellant argues that the trial court miscalculated damages, failed to award a continency fee, and failed to award prejudgment interest.

**{¶2}**  Only appellee LuAnn McDermaid ("McDermaid") entered an appearance in the trial court; however, the trial court held that all defendants, except for Dennis C. Blaeuer ("Blaeuer") had been properly served.  In the instant appeal, no briefs have been filed by appellees.

**{¶3}**  We affirm the trial court's findings in part, and reverse in part.

## II.  BACKGROUND AND FACTS

**{¶4}**  K&K represented former client appellees Smart Media of Delaware, Inc. ("SMDel"), Snapshopper, Inc. ("Snapshopper"), Smart Media Holdings, LLC ("SMH LLC"), Smarthandle,™ Inc. ("Smarthandle"), SMDI Special Trust ("SMDI Trust"),

Blaeuer, and McDermaid in *Telxon Corp. v. Smart Media of Delaware, Inc.*, Summit C.P. No. CV 1998 12 4664 (the "Suit"). The period of representation began in 1999 and concluded in 2011.

**{¶5}** In 2004, the K&K partnership dissolved and K&A assumed representation as the successor in interest. Appellant counsel Robert D. Kehoe ("Kehoe") alleges that the collection of aged legal fees is part of the winding up of the partnership's affairs. Compensation for the services is documented in the attorney fee agreements.

### A.     1999 Fee Agreement

**{¶6}** The February 25, 1999 fee agreement ("1999 FA") is between K&K and addressed to Blaeuer as president of SMDel. K&K is to handle SMDel's defense and counterclaims. The rate is a combined hourly and contingent fee basis:

> The hourly rate will be a flat blended rate of $150 per hour for all work. In the event any recovery is had against Telxon, the Firm shall be entitled to an additional fee of 25% prior to deduction of costs and/or expenses, of any settlement which may be agreed to with Telxon, or any judgment which may be rendered against Telxon.

**{¶7}** The 1999 FA further explains the meanings of contingency fees and out-of-pocket costs permitted by Ohio law and describes the "closing" statement K&K will provide to SMDel upon entitlement to contingency fee compensation, detailing the fee calculations. Also set forth is K&K's right to terminate if SMDel fails to pay fees or out-of-pocket costs in excess of 30 days after invoice receipt or allows the retainer to drop below $2,500 after K&K's demand for replenishment. Blaeuer and Kehoe executed the 1999 FA.

## B.     2000 Fee Agreement

**{¶8}**   The 2000 Fee Agreement ("2000 FA") is also addressed to Blaeuer as president of SMDel and is identified as an "additional attorney fee agreement."   The scope of the agreement is to represent Blaeuer individually, as a shareholder, in an amended counterclaim asserting independent claims by Blaeuer against Telxon in the Suit as well as to represent    SMDel, SMDI Trust, SMH LLC, Snapshopper, and Smarthandle (the "Related Entities").   The 2000 FA contains the contingency and hourly combination at $150 set forth in the 1999 FA and further provides that the 1999 FA and 2000 FA:

> [C]onstitute one agreement and that you, individually, Smart Media and the Related Parties will be jointly and severally responsible for the obligation to pay attorney fees and expenses to the Firm. Stated differently, the Firm is representing you and the Related Entities with the understanding and agreement that each party will be responsible for the obligations of the others because the Firm's legal work on behalf of one will benefit all. This obligation shall not be divisible as each of you and the entities will be responsible for the obligations of the others as a condition of the Firm's agreement to represent all of you in the counterclaims.  It is expressly understood and agreed that the legal work required to defend the Telxon claims against Smart Media is the same legal work required to prosecution of the counterclaims, and cannot be divided or apportioned among the various parties.

**{¶9}**   K&K's right to terminate language has been expanded in the 2000 FA to include that:

> In the event that you or the [R]elated [E]ntities are terminated by the Firm for nonpayment, then the Firm shall be entitled to an hourly fee of a flat blended rate of $200 per hour in recognition of the fact that termination will remove the contingency fee portion of this split fee agreement that would otherwise be achievable by the Firm had you and the Related Entities performed as agreed.

The agreement is executed by Kehoe and Blaeuer, individually and on behalf of the Related Entities.

### C. McDermaid Fee Agreement

{¶10}   Also on March 7, 2000, McDermaid, as a shareholder party to the amended counterclaim in the Suit, entered into a fee agreement with K&K ("McDermaid FA" [the McDermaid FA, 1999 FA and 2000 FA collectively, the "Fee Agreements"]). The McDermaid FA provisions are similar to those in the 2000 FA, and reference the 2000 FA including Blaeuer and the Related Entities.[1]

{¶11}   The McDermaid FA does not state that it becomes a part of the combined 1999 FA and 2000 FA; however, it does contain a commitment by Blaeuer  that Snapshopper and Smart Media entities would pay the Firm's hourly fees on behalf of all individual shareholders. The agreement also delineates individual shareholder liability:

> It is our expectation that you will be responsible for our legal fees in your individual capacity, jointly and severally with the other parties. This means that if the Snapshopper and Smart Media entities fail to pay the Firm as agreed, then you will nevertheless be responsible for paying our fees.

{¶12}   None of the fee agreements provide for interest on overdue balances. There is also no requirement for payment of late fees.

### D. The Suit and Request for Charging Order and Attorney Lien

{¶13}   The verdict in the Suit was entered on September 17, 2003.   K&K filed a motion to declare a charging lien.   Notice of the K&K dissolution was subsequently

---

[1] Unlike the 2000 FA, the McDermaid FA clarifies that the Snapshopper, Inc. entity was formerly known as Smart Media of Delaware, Inc.

filed with the court by attorney Keller of K&K, asserting a lien on any judgment proceeds based on his interest.

{¶14} Appellees fought the K&K motion for fees on the grounds that the judgment was not produced, procured, or created by K&K as a matter of law per *Cohen v. Goldberger*, 109 Ohio St. 22, 141 N.E. 656 (1923). Appellees also asserted that K&K filed a motion to withdraw almost a year before the verdict, and had also refused to release the case files to appellees, including depositions and other information required to proceed. Appellees asserted that they were forced to move forward without the information that they were unable to secure from other sources.

{¶15} On September 21, 2004, the Summit County Common Pleas Court ("*Telxon Court*") granted a priority fee lien to the attorney that represented appellees at the time of judgment. On May 2, 2005, the *Telxon Court* issued a judgment entry addressing K&K's lien request:

> K&K does not need an attorney's charging lien to secure its claims but can sue [SMDel] for Breach of Contract to recover any fees it believes it is due. This court agrees. * * * K&K withdrew it's representation nearly a year before the trial began. * * * Any contribution that K&K might have made to [SMDel's] legal cause earlier in the litigation was too remote to survive the creation of the fund test. K&K's recourse is to sue for Breach of Contract to recover any fees it believes it is due.

The trial court also denied K&K's request for joinder of the entity that allegedly received the assignment of the judgment proceeds in the Suit as collateral for extending financing.

{¶16} On September 21, 2005, the Ninth District Court of Appeals reversed the trial court's judgment in favor of appellees. *Telxon Corp. v. Smart Media of*

*Delaware, Inc.*, 9th Dist. Summit Nos. 22098 and 22099, 2005-Ohio-4931. On November 23, 2005, the Ninth District Court of Appeals dismissed K&K's appeal of the trial court's lien denial as a result of the judgment reversal:

> Appellant Keller & Kehoe, L.L.P. (K&K), appeals from a judgment of the Summit County Court of Common Pleas, which denied K&K's motion for an attorney charging lien against Smart Media of Delaware, Inc. [SMDel]. We dismiss the appeal under the doctrine of mootness.  * * *
>
> [SMDel] was sued by Telxon Corp., and retained K&K to defend the suit and file a counterclaim.  At some point during discovery but prior to commencement of the trial, K&K withdrew from representing [SMDel], who was thereafter represented by another attorney.  The case proceeded to trial and [SMDel] obtained a $ 212 million verdict against Telxon. K&K moved the trial court for an order to declare and enforce an attorneys' lien on [SMDel's] $212 million verdict. The trial court first granted then, upon reconsideration, later denied the lien.
>
> Meanwhile, Telxon filed a direct appeal to this court, challenging the validity of SMI's $212 million verdict. This court reversed the decision and directed a verdict in favor of Telxon. *Telxon* at ¶148.  *Accordingly, there is presently no judgment in favor of [SMDel]; there is no award from which [SMDel's] attorneys would receive a contingent fee or to which a lien might attach.*
>
> K&K had appealed the denial of the lien prior to the outcome of Telxon's direct appeal, and has persisted despite the reversal of that judgment. K&K asserts three assignments of error, which we have consolidated to facilitate review.  * * *
>
> K&K asserts that the trial court erred in refusing to uphold the attorney charging lien against the appellees, SMI and a third party who K&K sought to join to the action.  We conclude that these arguments have been rendered moot by ensuing circumstances, and this appeal must be dismissed.

(Emphasis added.) *Id*. at ¶ 1-4, 9.

## E.    Default Hearing

{¶17} Early in this case, the trial court ruled against McDermaid's motion to dismiss that was treated as a motion for summary judgment. McDermaid did not file an answer in the case. None of the appellees, including McDermaid, attended the default hearing.

{¶18} Robert Kehoe ("Kehoe") explained at the hearing that K&K represented the parties in the Suit and initially had an attorney's lien against proceeds. Initially, appellees remitted payment for invoices. Appellees failed to pay the monthly statements from June 2000 through January 2001. K&K terminated their representation of appellees for nonpayment in September 2002.

{¶19} In 2003, a jury verdict was rendered for $212,000,000 in favor of appellees. K&K filed a judgment lien for 25% of the award. Kehoe asserted that the judgment was "monetized" for $23,000,000 with Cerberus, a New York investment firm, and that appellees received unstated monetary sums.

{¶20} K&K's initial lien was discharged by the *Telxon Court* on appellees' motion in 2004, which is why appellant is suing on the Fee Agreements. The *Telxon* case was appealed on the merits. During that time, a new judge took over the *Telxon* case in the local court and granted the motion to permit the monetization.

{¶21} Kehoe denied that res judicata applied because the K&K lien was released by the *Telxon Court* with the "proviso that you can sue them [on the Fee Agreements] and get a judgment lien at some point in the future." Kehoe claimed entitlement to: (1) $5,750,000, constituting 25% of the alleged $23,000,000 monetization, as K&K's

contingency fee entitlement; (2) $552,042.31 in unpaid hourly fees; (3) prejudgment interest of $341,891.71 on the hourly fees; and (4) $2,990,000 for statutory interest on the contingency.

**{¶22}** The Fee Agreements, as well as the purported monetization agreement,[2] were introduced into evidence. Kehoe asserted that K&K was excluded from participating in the monetization proceedings and that the attorney with the fee lien priority accepted a discounted amount. In response to the trial court's inquiry, Kehoe stated the motion to discharge K&K's lien was not appealed. The trial court requested copies of the underlying billing documents and computations, and took the matter under advisement.

**{¶23}** The final opinion and order was issued on September 8, 2015. The court found that: (1) service had been perfected on all defendants except Blaeuer; (2) the contingency entitlement disappeared upon termination of representation for nonpayment and converted to an hourly billing rate of $200 pursuant to the Fee Agreements; (3) McDermaid's motion to dismiss was treated as a motion for summary judgment and was denied, and her failure to answer or otherwise appear resulted in a default judgment; and (4) K&K was entitled to recover $495,100 in hourly legal fees and $31,996.06 in costs and expenses, subject to statutory interest from the date of judgment, and court costs.

---

[2] Exhibit B in the record contains Smart Media documents advising shareholders of the proposed loan collateralization to be secured in part by the *Telxon* judgment, however, no contract is included. Thus, consummation and distribution of the monetization loan is not conclusively documented in the record.

## III.    ASSIGNMENTS OF ERROR

**{¶24}**    Appellant proffers three assignments of error:

I.    The trial court erred in determining that plaintiff was not entitled to recover on the contingent fee portion of the split fee engagement with defendant Smart Media of Delaware, Inc. based on the "totality of the circumstances."

II.    The trial court erred in determining that plaintiff was only entitled to interest on its judgment at the statutory rate from the date of judgment as opposed to the date payments were due as required by R.C. 1343.03(A).

III.    The trial court erred in determining that after defendants defaulted on payment, plaintiff was only entitled to recover on the increased hourly portion of the fee agreement based on unpaid invoices as opposed to all hours worked during the entire engagement.

**{¶25}**    We preface our analysis with the observation that appellees have failed to file briefs in this case.    Pursuant to App.R. 18(C), a reviewing court may proceed to determine the case on the merits, but the judgment may only be reversed where the appellant's brief reasonably supports grounds for reversal:

> It is this court's judgment that this rule correctly reflects "the essential nature of burdens of proof in our system for dispute resolution," *Reese v. Proppe*, 3 Ohio App.3d 103, 443 N.E.2d 992 (1981), and that any conclusion to the contrary would obviate a party's burden to prove the truth of his or her legal claims.    After all, the basic premise of our legal system is "the proof of truth in order to justly resolve disputes."

*Id.* at 106, 107.    *Harvey v. Civ. Serv. Comm.,* 8th Dist. Cuyahoga No. 62335, 1993 Ohio App. LEXIS 1976, at *13-14 (Apr. 8, 1993).

### A.    First Assignment of Error

**{¶26}**    Appellant first argues the trial court's denial of the contingency fee portion of the split fee engagement was in error because it was not based on the "totality

of the circumstances."   We disagree.

{¶27}   We are guided in our examination of this issue by the following:

> We review a trial court's decision to grant a motion for default judgment under an abuse of discretion. *Chase Bank USA, N.A. v. Courey*, 8th Dist. Cuyahoga No. 92798, 2010-Ohio-246, ¶ 22. "But unlike the initial decision to grant a default judgment, 'the determination of the kind and maximum amount of damages that may be awarded is not committed to the discretion of the trial court, but is subject to the mandates of Civ.R. 55(C) and Civ.R. 54(C)." *Dye v. Smith*, 189 Ohio App.3d 116, 2010-Ohio-3539, 937 N.E.2d 628, ¶ 7 (4th Dist.), quoting *Natl. City Bank v. Shuman*, 9th Dist. Summit No. 21484, 2003-Ohio-6116, ¶ 6.   Thus, "the question of whether a trial court's grant of default judgment complies with Civ.R. 55(C) and Civ.R. 54(C) is one of law, which we review de novo."   *Id.*; *see also Masny v. Vallo*, 8th Dist. Cuyahoga No. 84938, 2005-Ohio-2178, ¶ 15.

*Arendt v. Price,* 8th Dist. Cuyahoga No. 101710, 2015-Ohio-528, ¶ 8.

{¶28}   Appellant points to *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 68 Ohio St.3d 570, 629 N.E.2d 431 (1994), for the premise that a trial court must consider the totality of the circumstances in determining the reasonable value of an attorney's service.   This court has embraced the *Reid* analysis:

> A trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in *quantum meruit* should consider the totality of the circumstances involved in the situation. The number of hours worked by the attorney before the discharge is only one factor to be considered. Additional relevant considerations include the recovery sought, the skill demanded, the results obtained, and the attorney-client agreement itself.

(Emphasis added.)   *Belovich v. Mehdi*, 8th Dist. Cuyahoga No. 70071, 1996 Ohio App. LEXIS 2340, at *2 (June 6, 1996), citing *Reid.*

{¶29}   While we espouse the general proposition of *Reid*, we observe that *Reid* and its progeny are distinguishable from the instant case. In *Reid* and *Belovich*, the trial

courts were faced with formulating an equitable resolution for attorneys who were discharged from a contingency fee arrangement. However, appellant's claim is based on the alleged breach of express fee agreements that specifically address the parties' obligations in the event that K&K withdrew from representation for nonpayment, exactly what transpired in this case:

> In the event that you or the related entities are terminated by the Firm for nonpayment, then the Firm shall be entitled to an hourly fee of a flat blended rate of $200 per hour in recognition of the fact *that termination will remove the contingency fee portion* of this split fee agreement that would otherwise be achievable by the Firm had you and the Related Entities performed as agreed.

2000 FA. *See Bowers Constr. Co. v. Gilbert*, 2014-Ohio-3576, 18 N.E.3d 770, ¶ 11 (9th Dist.) (an equitable quasi-contract claim exists only where there is no valid contract); *Champion Constr. & Constr. Co. v. Valley City Post No. 5563*, 9th Dist. Medina No. 03CA0092-M, 2004-Ohio-3406, ¶ 25 ("a party cannot claim that both an express contract and a quasi-contract exist over the same subject matter").

**{¶30}** A default hearing is not required for liquidated damages as such damages "'can be determined with exactness from the agreement between the parties or by arithmetical process or by the application of definite rules of law.'" *Faulkner v. Integrated Servs. Network, Inc.*, 8th Dist. Cuyahoga Nos. 81877 and 83083, 2003-Ohio-6474, ¶ 27, quoting *Huo Chin Yin v. Amino Prods. Co.*, 141 Ohio St. 21, 46 N.E.2d 610 (1943). However, a trial court abuses its discretion by failing to hold a hearing in a default case to determine unliquidated damages.

**{¶31}** "Ohio law requires the presentation of proof of damages for an

unliquidated claim before any can be awarded." *Faulkner v. Integrated Servs. Network, Inc.*, 8th Dist. Cuyahoga Nos. 81877 and 83083, 2003-Ohio-6474, ¶ 26, citing *Buckeye Supply Co. v. N.E. Drilling Co.*, 24 Ohio App.3d 134, 493 N.E.2d 964 (9th Dist.1985). Civ.R. 55(A). In conducting such a hearing, a trial court is vested with broad discretion in assessing the weight and credibility of the evidence of damages. "An appellant's disagreement with the trier of fact as to the appropriate amount of damages is not grounds for reversal." *Arendt v. Price*, 8th Dist. Cuyahoga No. 101710, 2015-Ohio-528, ¶ 16.

{¶32} Thus, based upon a thorough review of the record, we find that the trial court did not abuse its discretion in determining that appellant failed to substantiate entitlement to a contingency fee. The Fee Agreements are clear and unequivocal:

> "Where terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146, 150 (1978); *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), paragraph one of the syllabus.

*Long Beach Assn. v. Jones,* 82 Ohio St.3d 574, 577, 1998-Ohio-186, 697 N.E.2d 208. *See also Cohen v. Goldberger*, 109 Ohio St. 22, 27, 141 N.E. 656 (1923) (an attorney's entitlement to a lien on the proceeds of a judgment is based on the principle that the attorney's service, skill and labor actually produced the judgment).

**{¶33}**   We also observe that, in light of the reversal of the judgment in favor of SMDel on appeal in the Suit, "there is no award from which [SMDel's] attorneys would receive a contingent fee."   *Telxon,* 9th Dist. Summit Nos. 22543 and 22673, 2005-Ohio-6223, ¶ 3.   Coupled with the lack of evidence in the record that a sum certain was actually received by the appellees as proceeds of the contingency, the first assignment of error is overruled.

## B.      Second Assignment of Error

**{¶34}**      Appellant's second assigned error challenges the trial court's determination that appellant was only entitled to interest from the date of judgment as opposed to the date that the payments were due under R.C. 1343.03(A).   We find that this argument has merit.

**{¶35}** Per *Waina v. Abdallah,* 8th Dist. Cuyahoga No. 86629, 2006-Ohio-2090, the award of prejudgment interest is not discretionary once liability for breach of contract has been established:

> The award of prejudgment interest as to claims arising out of breach of contract is governed by R.C. 1343.03(A).   *Bain Builders, Inc. v. Rockport Retirement Ltd. Partnership*, 8th Dist. Cuyahoga Nos. 74486 and 74672, 1999 Ohio App. LEXIS 3388 (July 22, 1999).   In pertinent part, R.C. 1343.03(A) provides that:   "* * * when money becomes due and payable upon any bond, bill, note, or other instrument of writing, * * * for the payment of money arising out of * * * a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum * * *."
>
> In a breach of contract case between private parties where liability is established, the trial court does not have discretion in awarding prejudgment interest. *Reminger & Reminger Co., L.P.A. v. Fred Siegel* Co., Cuyahoga No. 77712, 2001 Ohio App. LEXIS 760 (Mar. 1, 2001), citing

*Dwyer Elec., Inc. v. Confederated Builders, Inc.*, 3d Dist. Crawford No. 3-98-18, 1998 Ohio App. LEXIS 5490 (Oct. 29, 1998). Specifically, in cases like this one, where a party has been granted judgment on an underlying contract claim, that party is entitled to prejudgment interest as a matter of law. *Id.*

In determining whether to award prejudgment interest pursuant to R.C. 1343.03(A), an aggrieved party should be compensated for the lapse of time between accrual of the claim and judgment. *Royal Elec. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St.3d 110, 116, 652 N.E.2d 687 (1995). Accordingly, the only issue for resolution by a trial court in claims made pursuant to R.C. 1343.03(A) is how much interest is due the aggrieved party. *Id.* In order to determine this, the trial court must make a factual determination as to "when interest commences to run, i.e., when the claim becomes 'due and payable,' and to determine what legal rate of interest should be applied." *Dwyer Elec.*, supra; quoting *Royal Elec.* at 115. Thus, while the right to prejudgment interest in a contract claim is a matter of law, the amount awarded is based on the court's factual determination of an accrual date and interest rate. *Id.*

*Id.* at ¶ 38-40.

**{¶36}** We therefore, sustain appellant's second assignment of error on the issue of prejudgment interest. The case is remanded to the trial court to assess the amount of prejudgment interest and issue judgment accordingly.

## C. Third Assignment of Error

**{¶37}** Appellant's final assignment of error is that the trial court should have calculated the increased hourly portion of the fee agreement based on all hours worked during the entire engagement, including those hours covered by the invoices previously paid by appellees. We disagree.

**{¶38}** The fee agreements provide for an increase in the hourly rate from $150 to $200 upon termination by the firm, and contain the rationalization that the additional hourly compensation serves to replace the contingency fee portion. The agreements do not state that the increase applies retroactively to billings from the inception of the relationship.

**{¶39}** We do not find that the trial court's interpretation of the clause constitutes an abuse of discretion. Appellant's argument that the trial court misunderstood the provision lends credence to the position that the clause is subject to more than one interpretation. As we have previously observed:

> Where the written agreement is clear and unambiguous, it is not necessary to resort to rules of construction to determine the intent of the parties. *Allen v. Standard Oil Co.*, 2 Ohio St.3d 122, 124, 443 N.E.2d 497 (1982). However, where a contract is ambiguous, a fundamental rule of construction holds that the ambiguity must be construed against the drafter of the agreement. *Control Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 413, 406 N.E.2d 515; *Holderman v. Huntington Leasing Co.*, 19 Ohio App.3d 132, 134, 483 N.E.2d 175 (1984). *This rule of construction is particularly applicable to attorney fee agreements in which the attorney who drafts the agreement possesses a superior bargaining position.* *Jacobs v. Holston*, 70 Ohio App.2d 55, 434 N.E.2d 738 (1980).

(Emphasis added.) *Dream Makers v. Marshek*, 8th Dist. Cuyahoga No. 81249, 2002-Ohio-7069, ¶ 15.

**{¶40}** The agreements were prepared by the legal firm of K&K and any ambiguity is construed against it. Appellant's third assignment of error is overruled.

## IV.   CONCLUSION

**{¶41}**   The trial court's judgment is affirmed in part and reversed in part. We reverse the trial court's determination that appellant was not entitled to prejudgment interest and remand for further proceedings on that issue. The remainder of the trial court's judgment is affirmed.

**{¶42}**   The trial court's judgment is affirmed in part; reversed in part; and remanded for further proceedings consistent with this opinion.

It is ordered that the parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR