ANDERS, Appellant,

v.

SPECIALTY CHEMICAL RESOURCES, INC., Appellee.

[Cite as *Anders v. Specialty Chem. Resources, Inc.* (1997), 121 Ohio App.3d 348.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69648.

Decided June 9, 1997.

Mansour, Gavin, Gerlack & Manos Co., L.P.A., Jeffrey M. Embleton, Katherine A. Vierkorn and John F. Burke, for appellant.

Kenneth J. Fisher Co., L.P.A., Kenneth J. Fisher and Robert G. Mansour, for appellee.

KARPINSKI, Judge.

Plaintiff-appellant George Anders appeals from orders of the trial court granting summary judgment and dismissing his remaining claims against his former employer, defendant-appellee Specialty Chemical Resources, Inc. ("SCR"), in this employment termination dispute. For the following reasons, we reverse summary judgment on Anders's claim for an unpaid bonus and the dismissal of two claims stemming from the termination of his employment for ignoring his employer's alleged instructions to commit crimes or engage in seriously improper misconduct.

Anders commenced this action following the termination of his employment by filing a six-count complaint against SCR in the trial court, alleging (1) breach of (express) contract, (2) breach of implied contract, (3) promissory estoppel, (4) violation of public policy, (5) breach of a covenant of good faith and fair dealing, and (6) infliction of emotional distress. SCR denied the substantive allegations in Anders's complaint and subsequently filed a motion for summary judgment on the first three claims and a motion to dismiss the remaining three claims.

SCR's motion for summary judgment argued that Anders failed to produce evidence to establish anything other than an at-will employment relationship.

SCR specifically argued that there was no evidence that it had made any statement or promise to Anders of employment for a definite duration as a vice-president. Anders filed a brief in opposition to summary judgment. The trial court ultimately granted the motion for summary judgment.

SCR's motion to dismiss argued that Anders's complaint failed to state a claim on the remaining three claims. Anders opposed the motion to dismiss. The trial court granted the motion to dismiss following additional briefs by the parties. Anders timely appeals, raising six assignments of error, which are not separately briefed or argued.

## I

Anders's first, second, and third assignments of error challenge the trial court's order granting summary judgment as follows:

"The trial court erred by summarily adjudicating the claim of breach of the express employment contract where genuine issues of material fact remained for adjudication.

"The trial court erred by summarily adjudicating the claim of breach of the implied employment contract where genuine issues of material fact remained for adjudication.

"The trial court erred by summarily adjudicating the claim of promissory estoppel where genuine issues of material fact remained for adjudication."

The first assignment is well taken in part, and the second and third lack merit.

Anders argues that the trial court improperly granted summary judgment against him on his claims for breach of express and implied contract and promissory estoppel. Anders contends that his claims are supported by SCR statements assuring him of a "secure future" and "secure career" or that he could be terminated only for inadequate performance. Anders also argues that SCR breached the terms of an express compensation agreement.

In a prior case this court exhaustively analyzed the case law involving similar claims and held that such statements are insufficient to establish express or implied contracts or promissory estoppel. *Corradi v. Soclof* (May 25, 1995), Cuyahoga App. No. 67586, unreported, at 4–5, 1995 WL 322311. It is well established that employment agreements that do not specify a particular duration or term of employment are presumed to be terminable by either party at will for any reason not contrary to law. As a result of our review of the record, we conclude that Anders failed to produce any evidence to demonstrate any specific duration of employment or that he could be terminated only for cause.

Anders's reliance on *Wright v. Honda of Am. Mfg.* (1995), 73 Ohio St.3d 571, 653 N.E.2d 381, to support his arguments to the contrary is misplaced. *Wright* involved a breach-of-implied-contract claim by a factory worker terminated because her employer discovered that her half-brother was also employed by the manufacturer contrary to its antinepotism policy. However, over the course of a seven-year period the employer had made numerous oral and written, general and specific statements concerning the terms of her employment and the particular antinepotism policy. The manufacturer knowingly employed other pairs of relatives, its employee handbook specifically provided for transfer rather than termination for violation of the antinepotism policy, and on several occasions · management employees told the employee not to be concerned about the situation.

Contrary to Anders's argument, *Wright* does not mark a wholesale departure from prior law or warrant reversal of the trial court's summary judgment in this case. The opinion in *Wright* provides little guidance and is limited to the particular facts of that case.[1] The case *sub judice* does not involve similar facts. Anders was a high level management employee who negotiated the specific terms of his employment. There is no evidence, moreover, that SCR made any specific statements at any time to transform his employment relationship into something other than at will. The trial court, therefore, · properly granted summary judgment on Anders's claims for breach of express and implied contracts and promissory estoppel.

■ However, the trial court improperly granted summary judgment against Anders on his claim for breach of the parties' express oral and/or written compensation agreement. Anders alleged that SCR orally agreed to pay him various types of bonus compensation, which agreement was subsequently reduced to writing as follows:

"In addition to base salary, he will be eligible for a bonus of up to $40,000 based on independent objectives, *plus a 10,000 share bonus at the end of the first year of Momentum Stock. The stock bonus will continue at levels to be determined by the Board of Directors.* His bonus for the first year will be prorated based on eight (8) months." (Emphasis added.)

■ SCR's motion for summary judgment did not specifically address this claim. It is well established that the party seeking summary judgment has the initial burden of identifying those elements of the nonmoving party's case that do not raise a genuine issue of fact and upon which the moving party is entitled to

---

1. Only three justices concurred fully in the opinion. Three more concurred in the syllabus and judgment only. The remaining justice dissented.

judgment. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 273–274. SCR did not satisfy this burden, and Anders specifically pointed out this defect to the trial court. Granting summary judgment on a claim when a party made no argument concerning that claim is improper.

Furthermore, even if SCR had requested summary judgment on Anders's express contract claim for payment of bonuses, the record does not warrant summary judgment. Anders testified that SCR made an oral promise to pay bonuses, including the first year ten-thousand-share "signing" bonus. Moreover, the language, emphasized above, in the subsequent written document memorializing the agreement is ambiguous. It could reasonably be construed to mean that Anders either (1) was eligible for a ten-thousand-share bonus or (2) would receive the bonus at the end of the first year regardless of performance or "independent objectives." The latter construction is sufficient to constitute an enforceable contract. See *Holderman v. Huntington Leasing Co.* (1984), 19 Ohio App.3d 132, 19 OBR 221, 483 N.E.2d 175.

█ SCR's argument, presented for the first time on appeal, that this court affirm summary judgment on this issue because the bonuses were discretionary lacks merit for two reasons. First, Civ.R. 56 requires trial courts to consider motions for summary judgment in the first instance. Appellate courts cannot cure defects by independently reviewing the record and entering the judgment the trial court should have entered. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359–360, 604 N.E.2d 138, 140–141. Second, even if we construed SCR's promise concerning bonuses merely to make Anders eligible for discretionary bonuses, the record shows that SCR breached its promise to make Anders eligible for such bonuses. Corey Roth, an officer of SCR, testified that Anders was never eligible for share bonuses. Rather, Roth contended that the promise concerning bonuses was merely a "misunderstanding" and that Anders was eligible for share *options* but not for share *bonuses*. Under the circumstances, the trial court's order granting summary judgment on the bonus claim must be reversed.

Accordingly, Anders's first assignment is well taken in part and overruled in part, and his second and third assignments are overruled.

## II

Anders's fourth, fifth and sixth assignments of error challenge the trial court's dismissal of his remaining claims as follows:

"The trial court erred by dismissing Count 4 of plaintiff's complaint, a claim for employment termination in violation of public policy, where the complaint set

forth facts entitling him to recovery on this claim which has been expressly recognized as a viable cause of action in Ohio.

"The trial court erred by dismissing Count 5 of plaintiff's complaint, a claim for breach of the express covenant of good faith and fair dealing, where the complaint set forth facts entitling him to recovery on this claim which has been expressly recognized as a viable cause of action in Ohio.

"The trial court erred by dismissing Count 6 of plaintiff's complaint, a claim for infliction of emotional distress upon a wrongfully terminated employee, where the complaint set forth facts entitling him to recovery on this claim which has been expressly recognized as a viable cause of action in Ohio."

The fourth and sixth assignments of error are well taken, but the fifth assignment lacks merit.

Anders argues generally that the trial court improperly dismissed his remaining three counts for failure to state a claim. Anders specifically argues that his complaint stated claims for wrongful discharge in violation of public policy, breach of an express covenant of good faith and fair dealing, and infliction of emotional distress.

The Ohio Supreme Court has held that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus; *Fahnbulleh v. Strahan* (1995), 73 Ohio St.3d 666, 667, 653 N.E.2d 1186, 1187–1188; *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 229–230, 551 N.E.2d 981, 982–983.

Courts applying this standard must liberally construe the complaint, accept the allegations as true, and view them in the light most favorable to the pleading party. *Slife v. Kundtz Properties* (1974), 40 Ohio App.2d 179, 182, 69 O.O.2d 178, 180, 318 N.E.2d 557, 560. Dismissal is not warranted simply because the court doubts that the plaintiff will win on the merits. Reviewing *seriatim* the allegations in Anders's complaint under this standard, we find that the trial court improperly dismissed two of his three claims.

## A. Violation of Public Policy

Count four of Anders's complaint alleged generally that he was wrongfully discharged in violation of public policy. Paragraph 21 of his complaint contained the following specific allegations:

"Defendant's termination of Plaintiff's employment was based, in part, on Plaintiff's refusal to participate in or support improper and/or illegal acts of

officers of Aerosol [n.k.a. SCR], including Plaintiff's refusal to create documents to support the termination of two management employees and his refusal to participate in a scheme to increase the insurance claims of loss following the fire at the Macedonia facility in December, 1992."

This allegation can be reasonably construed in two different manners, either of which is sufficient to state a claim for relief.

Anders's claim can be construed to allege that SCR terminated his employment because he failed to participate in insurance fraud and/or falsification of insurance claims. The conduct that SCR allegedly directed Anders to perform arguably falls within the scope of R.C. 2913.47 (insurance fraud) and/or 2921.13(A)(10) (insurance claims falsification), both criminal statutes.[2] Such allegations were within the scope of the tort of wrongful discharge in violation of public policy, even before the Ohio Supreme Court expanded this type of claim to include public policies expressed in sources of law other than statutes. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981; *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.

The Ohio Supreme Court discussed the tort of wrongful discharge in the context of an employee's refusal to commit criminal acts in *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653. The court recognized that employees cannot be discharged for adhering to the requirements of criminal statutes contrary to their employers' directives. The *Rizkana* court specifically held that employees discharged for "refusal to participate in activities which *arguably* violate" criminal laws have a claim for wrongful discharge in violation of public policy. (Emphasis added.) *Id.* at 71, 652 N.E.2d at 658–659. Reversing the Fifth District Court of Appeals, the court stated that "[a]lthough there may have been no actual crime committed, there is nevertheless a violation of public policy to compel an employee to forgo his or her legal protections or *to do an act ordinarily proscribed by law.*" (Emphasis added.) *Id.* at 71, 652 N.E.2d at 658.

Alternatively, Anders's claim can be reasonably construed to allege violations of nonstatutory public policy sufficient to state a claim for relief. As noted above, after the parties briefed this issue in the trial court and shortly before the trial court rendered its opinion in this case, the Ohio Supreme Court expanded the grounds for recovery under the tort of wrongful discharge in violation of public policy. This state now recognizes a cause of action for wrongful discharge when the discharge violates a clear public policy expressed in sources of law other than statutes, including the common law. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.

---

2. These statutes were amended after the underlying events in this case.

To the extent that SCR's alleged "improper" "scheme" set forth in Paragraph 21 did not involve insurance fraud, claim falsification, or a violation of any other statute, Anders's claim was nevertheless sufficient to defeat dismissal. See *Sabo v. Schott* (1994), 70 Ohio St.3d 527, 639 N.E.2d 783 (holding that a former employee's allegation that he was terminated by his employer for testifying truthfully stated a claim for wrongful discharge in violation of public policy); see, also, *Merkel v. Scovill, Inc.* (S.D.Ohio 1983), 570 F.Supp. 133, 140–141, on reconsideration, 573 F.Supp. 1055, 1061 (declining to dismiss cause of action by former at-will employee for refusing to participate in alleged perjury or falsification). When viewed in the light most favorable to Anders, as we are required to do on a motion to dismiss, either construction of this claim was sufficient to withstand dismissal.

 SCR contends further that Anders's wrongful discharge claim is preempted by the Whistleblower Statute. The Whistleblower Statute, R.C. 4113.52, grants protection against discharge to employees who (1) *report* either (2) *violations of law* or (3) *matters reasonably believed to violate the* law. *Fox v. Bowling Green* (1996), 76 Ohio St.3d 534, 668 N.E.2d 898 (construing the Whistleblower Statute to extend to the reporting of matters reasonably believed to violate the law). The threshold requirements of the Whistleblower Statute are set forth in R.C. 4113.52(A)(1)(a), which provides:

"If an employee becomes aware in the course of his employment of [1] *a violation of* any state or federal *statute* or any ordinance or regulation of a political subdivision that his employer has authority to correct, and [2] the employee reasonably believes that the violation either is a *criminal offense* that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a *felony* \* \* \*." (Emphasis added.)

The case *sub judice* does not fall within the scope of the Whistleblower Statute for at least three independent legally sufficient reasons. First, as noted above, Anders's complaint can be reasonably construed to allege that SCR directed him to perform conduct that violated nonstatutory public policy, but the Whistleblower Statute applies by its own terms only to "violation[s] of any state or federal statute or any ordinance or regulation." Second, even if Anders's complaint is construed to allege the violation of criminal statutes, there is no basis to infer that Anders reasonably believed the crimes to involve "imminent risks of physical harm," "public health or safety hazards," or "felonies," particularly because insurance fraud and claim falsification are financial crimes and may constitute misdemeanors. R.C. 2913.47(C) and 2921.13(E)(3). Thus the threshold requirements have not been met.

However, even if they were, Anders's claim did not fall within the scope of the Whistleblower Statute. Anders did not allege (1) that he was terminated for

reporting anything, or (2) that any violation of law occurred, or (3) that he believed any violation of law occurred. Rather, as did the plaintiff in *Rizkana*, Anders alleged that he was terminated simply for *refusing to participate in violating* the law.

The *Rizkana* court recently considered and rejected the preemption argument in a similar case. In the context of a sexual harassment suit, the employer in *Rizkana* also argued that a statute (R.C. Chapter 4112, the Ohio Civil Rights Act) preempted the employee's common-law claim for wrongful discharge in violation of public policy. The Ohio Supreme Court held that the Civil Rights Act and public policy grounds constitute separate statutory and common-law exceptions to the employment-at-will doctrine. *Id.* at 72–74, 652 N.E.2d at 659–661, following *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212. One exception to a rule does not "preempt" another exception to the same rule. The First District Court of Appeals reached the identical result in the context of the Whistleblower Statute in *Delaney v. Skyline Lodge, Inc.* (1994), 95 Ohio App.3d 264, 276–277, 642 N.E.2d 395, 403–404.

*Rizkana* recognized three reasons why the wrongful discharge public policy tort claim was not precluded. First, the allegedly preemptive Civil Rights Act was not the sole source of public policy forming the common-law tort action because the wrongful discharge claim was also based on violation of criminal statutes. *Id.* at 73, 652 N.E.2d at 660. Second, there was no indication that the legislature intended the Civil Rights Act to constitute the exclusive remedy for every conceivable workplace discriminatory action and to exclude existing common-law actions. *Id.* at 73–74, 652 N.E.2d at 660–661. Third, Rizkana's claim did not fall within the scope of the Civil Rights Act, but did state an independent claim under common-law tort for wrongful discharge in violation of public policy. *Id.* at 74, 652 N.E.2d at 660–661.

The claim of preemption in the case at bar fails for the same reasons. First, Anders's common-law tort claim for wrongful discharge is based upon either criminal statutes, R.C. 2913.47 and/or 2921.13(A)(10), or nonstatutory public policy, but not upon the Whistleblower Statute. Second, there is no indication that the legislature intended the Whistleblower Statute to constitute a worker's exclusive remedy for every conceivable action involving allegations of prospective illegal conduct and to exclude existing common-law actions. Finally, Anders could not possibly bring his claim within the scope of the Whistleblower Statute because (1) no violation of law occurred, (2) he could have no reasonable belief that the law was violated, and (3) therefore, he could not orally or in writing inform his employer or the authorities that either had occurred.

The case *sub judice* is simpler than *Rizkana* and *Delaney*, and distinguishable from the cases finding a wrongful discharge claim preempted by the Whistleblow-

er Statute, because the Whistleblower Statute does not overlap with the public policy claim under the circumstances of this case. A whistleblower claim involves reporting violations of legislative enactments, whereas Anders's public policy claim does not require any reporting, the occurrence of any violation, or any statute. Finally, even if the two claims overlapped, as SCR contends, *Rizkana* and *Delaney* dictate that Anders stated a viable wrongful discharge public policy claim.[3]

One reason for recognizing a common-law cause of action for wrongful discharge is to serve the independent public policy of statutes, such as the criminal statutes in this case, or common-law public policies that do not themselves provide a remedy or private cause of action. Courts recognize that it violates public policy to order an employee to violate the law even if the employee refuses to do so and no law is subsequently violated. The Whistleblower Statute does not reach this incipient conduct, however.[4] As a result, it would serve no public policy of the Whistleblower Statute to preclude such claims and, at the same time, defeat the policy of other statutes or common-law precedents. Neither the Whistleblower Statute nor public policy compels employees to "invite retaliation" or risk their livelihoods to report possible future violations. Public policy is well served by the simple refusal to violate the law. Such refusal requires courage enough.

The preemption argument would leave employees who simply refuse their employers' order to violate the law or nonstatutory public policy without any remedy whatsoever. Any common-law claim they may have would be preempted by a statute which, by its own terms, could not provide any relief. Recognizing a wrongful discharge claim under these circumstances would not detract from the policy of the Whistleblower Statute (which is to protect employees and encourage reporting of serious violations of legislative enactments).

There is a critical distinction between affirmatively reporting a violation of law that has allegedly occurred and merely adhering to the law or public policy as in

---

**3.** The Ohio Supreme Court adhered to this position in an opinion issued after a majority of this panel reached this decision and after this court denied full *en banc* consideration. See *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308, and fn. 6 below. Kulch *unambiguously recognized that discharged employees can, under certain circumstances, simultaneously pursue both whistleblower and wrongful discharge claims. Although we find* Kulch *instructive and adhere to the Supreme Court's reasoning in this opinion,* Kulch *does not dispose of all the issues in this case because Anders raised a wrongful discharge claim only.*

**4.** The Whistleblower Statute does not, by its own terms, provide any protection to employees who are discharged for adhering to criminal statutes or refusing employers' commands to commit crimes or violate clear public policies. The statute likewise does not create any duty by employees to express opposition to mere requests to commit such criminal or improper conduct.

the case *sub judice*. In cases prior to the Supreme Court's most recent pronouncement in *Kulch*, 78 Ohio St.3d 134, 677 N.E.2d 308, appellate court opinions indicated that an employee could not recover on a claim for wrongful discharge *because the employee reported an incident* within the scope of, but failed to comply with, the requirements of the Whistleblower Statute.[5] However, in the case at bar the employee made no report and *could not have complied* with the Whistleblower Statute because the employee knew that no actual violation of law occurred. We are unwilling to ignore the distinction between reporting a violation (internally to the employer and/or externally to a third party) and, on the other hand, adhering to the law but not expressing any opposition to anyone (when no violation of the law has occurred) as in the case at bar. For these reasons, the trial court improperly dismissed Anders's wrongful discharge claim.

### B. Covenant of Good Faith and Fair Dealing

The trial court properly dismissed Count Five of Anders's complaint for breach of a covenant of good faith and fair dealing. It is well established that Ohio law does not recognize an action for breach of an *implied* covenant of good faith and fair dealing in this context. *Pyle v. Ledex* (1988), 49 Ohio App.3d 139, 551 N.E.2d 205. Anders attempts to distinguish this authority on the ground that his complaint alleged breach of an *express*, rather than implied, covenant of good faith.

The record shows, however, that Count Five of Anders's complaint does not refer to an express contract. Moreover, to the extent the complaint can be construed to allege the breach of an *express*, rather than implied, covenant, the claim duplicates his claim for breach of express contract in Count One. Dismissal of redundant claims does not constitute reversible error. *Phung v. Waste Mgt., Inc.* (1988), 40 Ohio App.3d 130, 133, 532 N.E.2d 195, 199–200.

### C. Intentional Infliction of Emotional Distress

The Ohio Supreme Court recognized the tort of intentional infliction of emotional distress in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

---

5. For example, SCR cites *Murray v. Clinton Petroleum Co.* (July 9, 1993), Portage App. No. 92–P-0086, unreported, 1993 WL 268459. In *Murray*, however, the employee actually *reported* the alleged violation of law to the employer and did not merely adhere to the law.

(*Bartow v. Smith,* 149 Ohio St. 301 [37 O.O. 10, 78 N.E.2d 735], overruled.)" *Id.* at syllabus.

Contrary to SCR's argument, the Ohio Supreme Court has recognized that, under some circumstances, at-will employees may maintain a cause of action against their former employers for intentional infliction of emotional distress arising out of their employment. *Russ v. TRW, Inc.* (1991), 59 Ohio St.3d 42, 570 N.E.2d 1076, syllabus.

■ The First District Court of Appeals reversed the dismissal of a claim against a former employer involving strikingly similar allegations in *Mason v. United States Fid. & Guar. Co.* (1987), 37 Ohio App.3d 22, 25, 523 N.E.2d 344, 347. Count Six of Anders's complaint alleged the following:

"27. The conduct of the Defendant as described above was done with a conscience [*sic*] disregard of Plaintiff's rights, had a great probability of causing substantial harm to Plaintiff and was done negligently, wilfully, and/or intentionally, proximately causing Plaintiff severe and extreme emotional distress, embarrassment, humiliation and mental anguish."

The complaint in *Mason,* which was sufficient to state a claim, was as follows:

"The Defendant USF & G acted intentionally and negligently and with a reckless disregard of Plaintiff's rights, inflicting pain and suffering and with knowledge that its actions would aggravate Plaintiff's emotional distress."

■ As in *Mason,* Anders's omission of the words "extreme and outrageous" before the word "conduct" was not fatal to pleading this claim. This count of Anders's complaint incorporated by reference all his prior specific allegations, which were sufficiently detailed to allege extreme and outrageous conduct. Although Anders's complaint is no pleading masterpiece, Civ.R. 12(B)(6) does not require parties to plead each element of their action with crystalline specificity. *Id.; Border City S. & L. Assn. v. Moan* (1984), 15 Ohio St.3d 65, 66, 15 OBR 159, 160–161, 472 N.E.2d 350, 351–352.

The case at bar, as in *Russ,* involves claims that the plaintiff was terminated after being directed during the course of employment to engage in illegal conduct. The exact nature of Anders's claim is unclear, but he is not required to plead facts. Under the circumstances, because the Ohio Supreme Court upheld a jury verdict on this claim for the former employee in *Russ,* it does not appear beyond doubt that Anders can prove no set of facts entitling him to recovery in this case.

■ The argument that Anders's claim of intentional infliction of emotional distress is preempted by the Whistleblower Statute is unpersuasive. *Russ* specifically recognized the validity of the claim of intentional infliction of emotion-

al distress in the context of an employment discharge case after passage of the Whistleblower Statute. *Id.* at syllabus; see, also, *English v. Gen. Elec. Co.* (1990), 496 U.S. 72, 110 S.Ct. 2270, 110 L.Ed.2d 65, where the United States Supreme Court unanimously held that a state common-law claim for intentional infliction of emotional distress was not preempted by a federal nuclear regulatory whistleblower statute. Dismissal of this claim was, therefore, premature.

In summary, it is well established that a motion to dismiss a complaint for failure to state a claim requires courts to accept the allegations as true and view them in the light most favorable to the nonmoving party. Even if there were any merit to the preemption argument, dismissal of Anders's claims at this early stage was erroneous because it requires construing the allegations against him. Dismissal of Anders's public policy and emotional distress claims was premature precisely because it does not appear beyond doubt that he can prove no set of facts entitling him to relief.

Accordingly, Anders's fourth and sixth assignments of error are well taken, but the fifth assignment is overruled.

The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

*Judgment accordingly.*[6]

JAMES D. SWEENEY, P.J., concurs.

PORTER, J., concurs in judgment only.

---

**6.** After this panel reached this decision, a member of the panel requested that certain matters be submitted to the full court for *en banc* consideration. See Eighth District Court of Appeals Standing Resolution Section 8(b); *Eisenberg v. Peyton* (1978), 56 Ohio App.2d 144, 10 O.O.3d 158, 381 N.E.2d 1136. The parties thereafter submitted additional briefs. On April 15, 1997, a majority of the court decided not to rehear the matter *en banc*. The Supreme Court issued its opinion in *Kulch* the following day. This opinion was revised to delete material related to a dissent on preemption grounds which was withdrawn prior to journalization.