[Cite as *Baker v. R/A Cab Co.*, 2019-Ohio-4375.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

William M. Baker, Jr.                                     Court of Appeals No. L-19-1031

      Appellant                                          Trial Court No. CVI-18-18709

v.

R/A Cab Co.                                              **DECISION AND JUDGMENT**

      Appellee                                           Decided:  October 25, 2019

* * * * *

William M. Baker, Jr., pro se.

* * * * *

**MAYLE, P.J.**

{¶ 1} The plaintiff-appellant, William M. Baker, Jr., appeals a January 23, 2019 judgment of the Toledo Municipal Court, Small Claims Division, that adopted a magistrate decision and ruled against Baker in his breach of contract claim against the defendant-appellee, R/A Cab Co.  As set forth below, we affirm the lower court's judgment.

**Facts and Procedural History**

{¶ 2} Baker applied for a job at R/A Cab Co. (hereinafter "the Company") in March of 2017 to work as a cab driver. According to the complaint, the Company's owner, Robert Bethany, told Baker that Baker would have to "to pay for [a] record check, drug testing, and all other licensure requirement[s] * * * to be employed." Baker claims he completed all of the pre-employment tasks, and despite his compliance, Bethany "made excuses and never put [him] to work," in violation of the Company's promise. Baker filed a complaint in small claims court on October 22, 2018, seeking $169 in damages and $5,000 in lost wages. The case was referred to a magistrate judge, and a hearing was held on November 26, 2018.

{¶ 3} At the hearing, Bethany testified that the Company holds many contracts with governmental agencies that require it to use drivers who have met certain qualifications. Consistent with those requirements, Bethany gave Baker a list of items at the time of application that Baker was required to furnish. That list, which was admitted at trial, provides as follows:

REQUIREMENTS FOR EMPLOYMENT WITH R/A CAB

INSURANCE CHECK:  615 KINGSBURY RD. $7

DRUG TESTING:  3028 NAVARRE (CARE CONSULTANTS) $43

FBI BACKGROUND CHECK:  GOVERNMENT CENTER $39

CPR/FIRST AIDE:  5650 W. CENTRAL AVENUE (CARE 4 YOU 2) $40

*TAXI LICENSE:  GOVERNMENT CENTER $25 * * *

2.

{¶ 4} The dispute in this case is whether Baker satisfied the CPR/first aid and the criminal background requirements.

{¶ 5} According to the record, Baker presented a CPR card to the Company indicating that he became certified in CPR on "1/14/17" and that the certification remained in effect until "01/2017." The parties agree that the reference to "1/2017" was likely a misprint. Baker claims that the Company's former office manager told him that the card would suffice. Bethany, however, testified that the Company "couldn't accept" the card because it was "expiring," and he instructed Baker to "come back with a new one, with the right date on it." Baker did not provide the Company with a corrected card.

{¶ 6} With regard to his criminal background check, Baker provided the Company with an October 11, 2016 letter from the Ohio Bureau of Criminal Investigations ("the BCI letter") to his previous employer. The letter states that the Federal Bureau of Investigations ("FBI") had conducted a criminal background check and, based upon its investigation, Baker "MAY NOT MEET qualifications for licensing or employment." (Emphasis in original.) The letter continues that further information would be made available to Baker, himself, upon the submission of an "FBI Request for Rapsheet form." Bethany testified that he instructed Baker to "[go] back" to the FBI and find out why he "was denied." Had Baker done so, the Company could have presented the details of Baker's criminal history to its "client" for a determination as to whether Baker was an acceptable candidate. According to the testimony at the hearing, Baker did not provide the Company with any additional information relative to his criminal background,

3.

including the rapsheet form. Bethany testified that he "kept telling" Baker to "[take] care of" those two issues, and Baker's failure to do so are the reasons "why he doesn't have a job."

{¶ 7} At trial, Baker asserted that the paperwork at issue was accepted by his previous employers, both cab companies. He claimed that the same paperwork was, in fact, also accepted by the Company or should have been. Baker alleged that the Company used faulty paperwork as an excuse not to hire him. He speculated, but produced no evidence to support his claim, that he was not hired because: (1) his previous employer complained to Bethany about damage Baker caused to one of its cabs; (2) the Company lacked sufficient working vehicles; (3) increased competition from Uber and Lyft; and (4) the Company preferred to hire female drivers.[1]

{¶ 8} In its decision, the magistrate found that Baker "did not meet the requirements for employment" and that the Company did not agree "to pay for the cost of completing [those] requirements." Pursuant to Civ.R. 53(E), Baker filed written objections to the decision. In support, Baker submitted "new evidence," including a letter from the Perrysburg Fire Department, dated after the magistrate decision, indicating that Baker's CPR certification was effective for two years from the date of certification. Baker also included a computer print-out, indicating that Baker was convicted of rape, in

---

[1] At trial, the magistrate advised Baker that, to the extent that he was claiming gender-bias, the court did not have jurisdiction to consider his claim. Baker did not object to the court's finding or raise the issue on appeal.

4.

violation of R.C. 2907.02, a first-degree felony, in 1984, for which he served two years in prison. On January 23, 2019, the trial court denied Baker's objections and adopted the magistrate's decision. Baker appealed. The Company did not file an appellate brief.

**Baker's Assignments of Error**

{¶ 9} Baker asserts seven assignments of error for this court's review. The assignments occupy five, single-spaced pages and are, at times, wandering and difficult to follow. Therefore, we have summarized them, as set forth below, and they are included, verbatim, as Appendix A.

**Assignment of Error No. 1**: The trial court erred in referring to Ohio's employment "at will" doctrine because Baker was "never hired" but rather "promised future employment."

**Assignment of Error No. 2**: The trial court erred when it determined that Baker "didn't meet the requirements for employment" because Baker provided the Company with his "criminal rap sheet * * * at the time of [his] application" for employment and because the CPR card, with its "mere typographical error * * * was not a basis for not putting [Baker] to work."

**Assignment of Error No. 3**: The trial court erred when it found that the BCI letter disqualified him from employment.

**Assignment of Error No. 4**: The trial court erred when it found that Baker was required to complete all of the "boilerplate list of requirements"

5.

when, in fact, the Company only "requested [that he] complete the drug test," which he did.

**Assignment of Error No. 5**:  The trial court erred by failing to find that the Company "accepted the documents presented by [Baker]" and by failing to find that the Company breached its contract with Baker.

**Assignment of Error No. 6**:  The trial court erred in finding that the Company "requested" that Baker "clear up matters" relative to his background check and CPR certification and in finding that Baker "refused to provide the information."

**Assignment of Error No. 7**:  The trial court erred in "refusing to allow" Baker to testify about conversations he had with the Company's former office manager at the time of application.

## Law and Analysis

{¶ 10} This case involves an appeal of a trial court judgment adopting a magistrate's decision and overruling objections thereto, pursuant to Civ.R. 53(D)(4)(d) ("In ruling on objections, the [trial] court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law").   A trial court's ruling on objections to a magistrate's decision will not be reversed on appeal absent an abuse of discretion. *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074, 97075, 2012-Ohio-3354, ¶ 11. Likewise, we review small claims court proceedings under an abuse-of-discretion

6.

standard. *Broadstock v. Elmwood at the Springs*, 6th Dist. Sandusky No. S-12-021, 2013-Ohio-969, ¶ 6. An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 11} Generally, Baker claims that the Company promised to employ him if he satisfied the conditions set forth in the "Requirements for Employment" sheet, that he satisfied those conditions, and that the Company refused to put him to work, in violation of its promise. Baker's claim, then, is for breach of a unilateral contract. A unilateral contract contemplates an offer which is accepted by performance of the stated terms or conditions therein, rather than by a return promise to perform. *Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 1, 472 N.E.2d 765 (6th Dist.1984) ("An offer of severance pay, to be paid to the employee if he remains with the employer-company until it closes, is an offer for a unilateral contract.").

{¶ 12} In his first assignment of error, Baker argues that the magistrate erred in referring to the "employment at-will" doctrine because he was "never hired" but merely "promised future employment." While Baker takes that position on appeal, he argued at trial, albeit inconsistently, that he was "hired" and was "an employee" of the Company. Addressing that argument, the magistrate found that "even if [Baker] successfully argued he was an employee, which the court, again, disagrees [with], the court must look to the law of at will employment in Ohio." It is well-established that representations "which do not specify a particular duration or term of employment are presumed to be terminable by

7.

either party at will for any reason not contrary to law." *Moss v. Electroalloys Corp.*, 9th Dist. Lorain No. 02CA008111, 2003-Ohio-831, ¶ 12, quoting *Anders v. Specialty Chem. Resources, Inc.*, 121 Ohio App.3d 348, 351, 700 N.E.2d 39 (8th Dist.1997). There is no claim in this case that the Company ever made an offer, either unilateral or bilateral, to employ Baker *for a specific duration.* Thus, the law of at-will employment is applicable to Baker's claims. Baker's first assignment of error is not well-taken.

{¶ 13} In assignments of error two through six, which we consider together, Baker raises competing arguments in support of his position that he did, in fact, meet the requirements for employment. On the one hand, Baker alleges that the Company accepted the CPR card and the BCI letter "as is." Alternatively, he argues that the Company should have accepted them because his previous employers found them acceptable and because the deficiencies were "ridiculously" obvious (CPR card) or mere "boilerplate" (BCI letter). And, finally, he claims—for the first time—that he actually did provide the Company with his "Rapsheet."

{¶ 14} The magistrate found, and the trial court adopted the conclusion that, the Company's unilateral offer to employ Baker required him to satisfy all of the requirements set forth on the checklist, including that he was certified in CPR/first aid and passed a criminal background check. The magistrate also found that the "expired" CPR card and the BCI "may not qualify" letter were deemed unacceptable by the Company and that the Company "gave [Baker] the opportunity to rectify" those shortcomings. Baker failed to do so, and therefore, he did not demonstrate that he was

8.

qualified for employment, i.e., he failed to accept the unilateral offer of employment.  In reaching this conclusion, the magistrate found Bethany's testimony, which was consistent with the employment checklist, more persuasive than Baker's, who frequently contradicted himself.  "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, and an appellate court may not substitute its own judgment for that of the finder of fact."  *Doe v. Vineyard Columbus*, 10th Dist. Franklin No. 13AP-599, 2014-Ohio-2617, ¶ 24.  In order to find error under an abuse-of-discretion standard, the reviewing court must find that there "is no sound reasoning process that would support that decision."  *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).  We see no abuse of discretion by the trial court in adopting the magistrate's decision.

{¶ 15} In addition, although Baker now claims that he "provided [the Company with his] criminal rap sheet * * * at the time of [his] application [in] February 2017," he did not testify to that effect during the trial.  Rather, Baker filed a computer print-out of his criminal background after the trial.  There is no indication that he ever gave it to the Company, and the document itself was not produced at trial.  Therefore, this document cannot be considered as evidence in support of his claim that he demonstrated to the Company that he met the requirements for employment.  Upon review, Baker's assignments of error two through six are not well-taken.

{¶ 16} Finally, in his seventh assignment of error, Baker contends that the magistrate erred in making certain rulings.  First, Baker complains that the magistrate

9.

improperly "curtailed" his testimony regarding the "patterns and practices" of his previous employers. We disagree. Whether or not Baker's previous employers accepted documents deemed deficient by the Company is not probative of the issue of whether Baker met the Company's qualifications.

{¶ 17} Second, Baker complains that he was prevented from testifying about "communications" with the former office manager about "specific documents." Baker, however, concedes that he did not subpoena the former manager because "she's not the owner," and he cannot now complain that she was unavailable to testify. Moreover, we have reviewed the record. Baker was allowed to testify that the former manager told him that the expired CPR card was sufficient, and the magistrate considered that testimony in reaching its decision.

{¶ 18} Finally, Baker claims that he also wished to call the "replacement" office manager, Essence Scott, as a witness. Baker alleges that Scott's employment file contains the same BCI "may not qualify" letter, but she was allowed to work for the Company, while he was not. Baker, however, failed to subpoena Scott to testify. Moreover, the record shows that Scott requested her "rapsheet," and the agency provided a response indicating two misdemeanor convictions. As stated, there is no evidence that Baker provided his "rapsheet" to the Company, and therefore the situations are not comparable. The magistrate did not abuse its discretion, and Baker's seventh assignment of error is not well-taken.

10.

**{¶ 19}** We find that the trial court did not abuse its discretion in adopting the magistrate's decision and finding that Baker's claim lacks merit. We find that Baker's assignments of error are not well-taken, and we affirm the January 23, 2019 judgment of the trial court. Pursuant to App.R. 24, Baker is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

**Appendix A**

**ASSIGNMENTS OF ERRORS**

ASSIGNMENT OF ERROR NO 1

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR WHEN THE TRIAL COURT DECIDED THE INSTANT CASE BASED ON THE LAW OF AT WILL EMPLOYMENT IN OHIO AND BASED UPON OCR 5107 TERMINATION WITHOUT JUST CAUSE AS CONTROLLING WHEN IN FACT BASED ON THE FACTS OF THIS CASE HERE WHICH ARE COMPLETELY DIFFERENT FROM FACTS THAT WERE ANALYSED IN THOSE "AT WILL"TYPES OF CASES AND THE AT WILL LAWS DOES NOT APPLY.HERE BASED UPON THE FACTS OF THE INSTANT CASE. WHEREUPON THE PLAINTIFF-APPELLANT WAS NEVER HIRED IN THE FIRST PLACE, ONLY PROMISED EMPLOYMENT BY APPELLEE THAT HE WOULD BE HIRED BASED UPON APPELLANT HAVING PASSED ONCE AGAIN DRUG TESTS AND HAD FURTHER PASSED, AND PAYING FOR HIS LICENSE AND BADGE AND HAVING MET ALL THE PAPERWORK REQUIREMENTS SO HE WAS ENTITLED TO HIRE AND APPELLEE'S PROMISED FUTURE EMPLOYMENT WHICH WAS NOT A TERMINATION WITHOUT JUST CAUSE, NOR IS APPELLEE'S ACTION EXCUSED BASED UPON THE LAWS OF AT WILL EMPLOYMENT IN OHIO, THOSE LAWS ARE INAPPLICABLE TO THE FACTS AS APPELLANT WAS NEVER HIRED, BUT WAS WELL PROMISED.

ASSIGNMENT OF ERROR NO 2

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR WHEN THE COURT DETERMINED THE APPELLANT DIDN'T MEET THE REQUIREMENTS FOR EMPLOYMENT BECAUSE THE TRIAL COURT DECIDED THE DEFENDANT FIRST WANTED RECTIFICATION OF THE CPR CARD AND WANTED RECTIFIANCE OF FBI CHECK AS JUSTIFICATION FOR NOT STARTING APPELLANT WHILE WITHIN THE RECORDS PROVIDED THE COURT IN THE APPELLANTS <u>ANSWER'S</u> EXHIBIT HERE IN THIS CASE RATIFIED THE ISSUE OF THE FBI CHECK. AND PROVIDED APPELLEE THE APPELLANT"S CRIMINAL RAP SHEET. AND THIS SAME RAP SHEET WAS PROVIDED TO THE APPELLEE AT THE TIME OF THE APPELLANT'S APPLICATION ON OR ABOUT IN FEBRUARY 2017.S0 THE FBI CHECK WAS NEVER A REAL ISSUE AND WAS PROVIDED TO THE COURT AFTER THE TRIAL AND SINCE THE COURT SENSIBLY DECIDED PROPOSED ISSUE WITH THE CPR CARD WAS PROBABLY JUST A MERE TYPOGRAPHICAL ERROR AND AS APPELLEE IT WAS NOT A BASIS FOR NOT PUTTING APPELLANT TO WORK AND WAS JUST A TYPOGRAPHICAL ERROR ONLY..

12.

ASSIGNMENT OF ERROR NO. 3


THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR SINCE ALL OF THE LETTERS FROM THE OHIO ATTORNEY GENERAL'S OFFICE AND THE FBI STATED THAT THE CANDIDATE "MAY NOT MEET" QUALIFICATION FOR LICENCING OR EMPLOYMENT. THE LANGUAGE "MAY NOT MEET' IS BOILERPLATE AND ARE SENT OUT TO ALL CANDIDATES,EACH RECEIVES THE SAME NOTICE AS DID THE APPELLANT BEING A CANDIDATE HIMSELF WHICH MEANS THE PLAINTIFF-APPELLANT IS EQUALLY QUALIFIED FOR LICENCING AND OR EMPLOYMENT AS IS ANY OTHER PERSON.. THE FBI ALSO PROVIDES THE CANDIDATES WITH THEIR RAP SHEET TO DISPEL ANY QUESTIONS THE POTENTIAL EMPLOYER MIGHT HAVE AS TO WHETHER THE CANDIDATES QUALIFY FOR EMPLOYMENT. ACCORDING TO WHAT CRIMES ARE ON APPELLANTS SHEET OCCURRED MORE THAN 7 YEARS AGO BEFORE THE APPELLANTS APPLICATION, THE CRIME WAS NOT HELD AGAINST HIM AT THE RIGHTEOUS ROAD CAB CO. APPELLANT'S FBI RAP SHEET SERVED AS PROOF HE QUALIFIES. WHEN APPELLANT QUALIFIED WITH RIGHTEOUS ROAD CAB USING THE RAP SHEET APPELLANT DISTINCTLY REMEMBERS THAT HE GAVE THE SAME RAP SHEET DOCUMENT TO APPELLEE'S OFFICE MANAGER AT THE BEHEST OF THE APPELLEE OMNER WHEN APPELLANT APPLIED WITH RA CAB..APPELLANT'S EXHIBIT A..

 MOREOVER OWNER ROBERT BETHANY ADVISED THE THEN OFFICE MANAGER WHO IS HIS DAUGHTER OF THE SPECIFIC DOCUMENTS SHE  SHOULD ACCEPT FROM APPELLANT'S RECENT EMPLOYMENT WITH THE RIGHTEOUS ROAD CAB CO. WITHOUT REQUIRING APPELLANT TO REDO THE PAPERWORK CONSIDERED AND ACCEPTED BY RIGHTEOUS ROAD OF EMPLOYMENT APPELLANT HAD HAVING EARLIER IN THE MONTH. BEEN EMPLOYED WITH, INCLUDING APPELLEE'S ACCEPTANCE OF THE APPELLANT'S RAP SHEET AND THE OHIO ATTORNEY GENERAL'S LETTER THAT APPELLEE INTRODUCED IN COURT WAS GIVEN TO APPELLEE BY THE APPELLANT. AT THE APPLICATION PROCESS.

13.

FACT THAT THE DEFENDANT -APPELLEE ACCEPTED MYRIAD OF DOCUMENTS FROM APPELLANT'S MOST RECENT PREVIOUS EMPLOYMENT ENDING APPROXIMATELY ONLY WEEKS EARLIER WITH "RIGHTEOUS ROAD CAB COMPANY" INCLUDING ACCEPTING THE CRIMINAL RAP SHEET AND THE FBI LETTER WHICH WAS GIVEN TO APPELLANT AROUND THE TIME AND DATE APPELLANT WAS HIRED OCTOBER 10 2016 ARE MATERIAL WHERE THE "MAY NOT MEET" LETTER AND THE RAP SHEET PERMITTED APPELLANT'S HIRE IN BY RIGHTEOUS ROAD CAB UNTIL ABOUT CHRISTMAS 2016 AND APPELLANT HAS PROVIDED THE RAP SHEET TO THE APPELLEE WHEN HE APPLIED FOR EMPLOYMENT WITH RA CAB AT THE END OF DECEMBER 2016 OR IN JANUARY 2017, ;AND PROVIDED THE INFORMATION TO THIS COURT IN THIS CASE SUBSEQUENT TO THE TRIAL IN AN EXHIBIT ATTACHED TO THE APPELLANT'S REQUEST FOR RECONSIDERATION LABELLED AS HIS, " ANSWER."


ASSIGNMENT OF ERROR NO. 4.

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY THE COURT'S BELIEF THAT APPELLANT COMPLETED ONLY SOME OF THE LISTED REQUIREMENTS.PROVIDED AS A CHECKLIST WITHOUT FURTHER CONSIDERING THAT APPELLANT COMPLETED ONLY ONE OF THE REQUIREMENTS APPELLEE LISTED BECAUSE OUT OF A BOILERPLATE LIST OF REQUIREMENTS THE APPELLANT ONLY WAS REQUESTED TO COMPLETE THE DRUG TEST THAT HE COMPLETED AGAIN EVEN THOUGH HE WAS PREVIOUSLY TESTED FOR DRUG USE BY BLACK AND WHITE CAB IN ON AND ABOUT AUGUST 2016 AT THEIR EXPENSE AND PASSED THE DRUG TEST AND GOT THAT JOB. FURTHERMORE HE WAS AGAIN TESTED FOR DRUG USE IN ABOUT OCTOBER 2016 BY RIGHTEOUS ROAD CAB COMPANY AT HIS OWN EXPENSE AND PASSED AND GOT THAT JOB, AND FINALLY HIS APPLICATION FOR EMPLOYMENT WITH RA CAB COMPANY THE APPELLEE REQUIRED EXCLUSIVELY FROM THE LIST OF REQUIREMENTS A THIRD DRUG TEST AND AGAIN LIKE FOR RIGHTEOUS ROAD CAB THE DRUG TEST WAS PERFORMED AT APPELLANT'S EXPENSE AND WAS PASSED.

ASSIGNMENT OF ERROR NO. 5.

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY NOT RULING THAT APPELLEE ACCEPTED THE DOCUMENTS PRESENTED BY APPELLANT FROM BLACK AND WHITE CAB COMPANY AND PRESENTED FROM THE RIGHTEOUS ROAD CAB COMPANY FOR THE BOILERPLATE LIST OF REQUIREMENTS INCLUDING THE FBI RECORD CHECK AND RAP SHEET AND THE CPR CERTIFICATION ACQUIRED BY FROM BLACK AND WHITE CAB COMPANY. [Handwritten: So appellee breached the contract. Claiming damages and lost wages to the Appellant. WmB 4/23/1]

14.

ASSIGNMENT OF ERROR NO. 6.

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY DECIDING THAT THE APPELLEE REQUESTED THE APPELLANT TO CLEAR UP MATTERS INVOLVED WITH FBI RECORD REPORT AND TO CLEAR UP A MATTER INVOLVED WITH DATE OF CERTIFICATION AND THE APPELLANT REFUSED TO PROVIDED THE INFORMATION.FOR APPELLEE. WHEN APPELLANT SAID HE WAS NOT REQUESTED TO CLEAR UP ANYTHING BECAUSE DOCUMENTS FROM PREVIOUS EMPLOYMENT WAS ACCEPTED WITHOUT ERROR OR ANY INADEQUACIES WERE EVER MENTIONED.  AND IN TRUTH THE APPELLEE IN HINDSIGHT AFTER THE APPELLEE RECEIVED NOTICE OF THIS CASE AGAINST HIM AND HIS COMPANY WENT THROUGH THE DOCUMENTS RECEIVED FROM THE APPELLANT IN HIS APPLICATION AND [Handwritten:  never] IDENTIFIED THE CONCERNS MENTIONED ABOVE AND IN COURT WITHOUT EVER HAVING MENTIONING THE FALSE CONCERNS TO THE APPELLANT SO APPELLANT NEVER HAD HE CHANCE TO ADDRESS THE ISSUED THE APPELLEE PRESENTED.  [Handwritten:  By so doing breached the employment contract.]

ASSIGNMENTOF ERROR NO. 7

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY REFUSING TO ALLOW PLAINTIFF- APPELLANT TO TESTIFY ABOUT COMMUNICATIONS HE HAD WITH REGARD TO DOCUMENTS HE HAD GIVEN TO THE MANAGER (DAUGHTER OF THE OWNER MR. ROBERT BETHANY) WHICH DOCUMENTS WERE ADJUDGED ACCEPTABLE BY HIS DAUGHTER BASED ON THE OWNER'S APPROVAL AND ACCEPTANCE OF THE PAPERWORK FROM THE RIGHTEOUS ROAD CAB COMPANY AND FROM BLACK AND WHITE CAB COMPANY WITHOUT REQUIRING APPELLANT TO REDO THE PAPERWORK.

NEITHER WAS APPELLANT ALLOWED TO TESTIFY AS TO WHAT SPECIFIC DOCUMENTS WERE GIVEN TO THE MANAGER AND WHAT COMMUNICATIONS APPELLANT HAD WITH THE MANAGER DURING HIS APPLICATION WHICH THE APPELLANT WANT TO TESTIFY TO IN ORDER TO REFUTE THE OWNER'S FALSE CLAIMS REGARDING THE FBI RECORD CHECK, AND OWNER'S FALSITY THAT HE ASKED THE APPELLANT TO PROCEED WITH RECORD CLEAN UP REQUIREMENT, AND WANTED APPELLANT TO GET CONFIRMATION OF CPR DATES OF COVERAGE, AND FALSEHOOD THAT APPELLANT REFUSED TO SIGN THE BANK STATEMENT,

MOREOVER THE APPELLANT WANTED TO ATTEST ABOUT DISCUSSION WITH THE OWNER AND DAUGHTER AT THE TIME OF HIS APPLICATION. HOWEVER HE COULD NOT THUSLY TESTIFY BECAUSE THE COURT DETERMINED THAT THE DAUGHTER HAD SINCE THE TIME OF APPELLANT'S APPLICATION HAD MOVED OUT OF TOWN AND LIVED OUT OF TOWN AND HAD NOT BE SUBPOENAED FOR THE TRIAL SO THAT ANY TESTIMONY REGARDING COMMUNICATIONS WITH HER OR AS TO THE DOCUMENTS GIVEN HER COULDN'T BE ADDRESSED IN THE APPELLANT'S TESTIMONY GIVING IN COURT BECAUSE THE DAUGHTER WAS NOT PRESENT TO REFUTE HIM.

FURTHERMORE THE COURT DID NOT ALLOW THE APPELLANT TO ADDRESS OR TO QUESTION THE REPLACEMENT MANAGER WHO WAS PRESENT IN COURT WITH THE OWNER. MOREOVER THE COURT STOPPED OTHER PERTINENT LINES OF QUESTIONING RULING THEM TO BE NOT RELEVANT AND STOPPED PERTINENT LINES OF QUESTIONING.

16.